555 A.2d 1374

Good Shepherd Workshop, Petitioner *v.*
Workmen's Compensation Appeal Board (Caffrey),
Respondents.

Submitted on briefs November 22, 1988, before Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*John P. Thomas,* for appellant.

*Martin J. Karess, Karess & Reich,* for respondent Mary Caffrey.

OPINION BY JUDGE CRAIG, March 17, 1989:

Good Shepherd Workshop, the employer, and its workers' compensation insurer appeal from an order of the Workmen's Compensation Appeal Board that affirmed a decision of a referee determining that claimant Mary Caffrey was entitled to workers' compensation benefits in connection with an injury that she sustained at her place of employment.

In view of our scope of review,[1] we may state the issues as follows: (1) whether the board committed error of law by supplying on its own a necessary finding of fact not made by the referee, in order to affirm the referee's conclusion that the head injury that the claimant suffered at work was work-related, and (2) whether the referee's finding that the head injury caused the later uncontrollable seizures suffered by the claimant, and hence her disability, was supported by substantial evidence.

---

[1] Our scope of review of a decision of the board is limited to determining whether there has been a constitutional violation or an error of law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Estate of McGovern v. State Employees' Retirement Board,* 512 Pa. 377, 517 A.2d 523 (1986); *Kerr v. Workmen's Compensation Appeal Board (Campbell Co.),* 108 Pa. Commonwealth Ct. 30, 529 A.2d 62 (1987).

In broad outline, the facts are not in dispute, although the parties differ greatly as to certain details and their legal effects. The claimant is an adult who previously had been diagnosed as having cerebral damage from the time of birth, which was attributed to non-specific prenatal injury. Her intellectual development had been characterized as retarded, but she had been in average physical health all her life, and she had never been known by family, friends or employers to exhibit seizure-like symptoms before the incident at issue here. Throughout her life the claimant attended school, cultural programs, family events and work therapy programs, and she had been an active participant in sporting events for the handicapped.

The claimant was a client employed for therapeutic purposes by Good Shepherd Workshop. She worked as an assembler and earned approximately $12.75 per week. On February 3, 1981, the claimant fell to the floor next to her work station and struck her head on the floor. The cries of co-workers alerted a supervisor in the room, and she went quickly to the claimant's work station. The supervisor found the claimant on the linoleum floor next to the table where she had been working, lying face up and bleeding from a cut on the back of her head. The supervisor testified that the claimant was unconscious but breathing when the supervisor arrived and also shaking or trembling, that the claimant shortly stopped breathing and began turning blue, and that, as the supervisor prepared to administer mouth-to-mouth resuscitation, the claimant began breathing again on her own, her natural color returned and she stopped shaking.

The program manager was summoned from his office down the hall from the workroom. He testified that he arrived within a matter of minutes, that the claimant was making no breath sounds when he arrived, and that her

face was pale but changed to blue in a matter of seconds. He said that the claimant started to whimper, that she was not shaking at that time, and that she started to breath on her own as he prepared to administer resuscitation. Ambulance personnel removed the claimant from the premises in about ten minutes.

At the Allentown and Sacred Heart Hospital, where she was taken for treatment, the claimant was awake and alert, and she responded appropriately to simple questions, although she was quite withdrawn. While the laceration on her head was being sutured, the claimant had a "focal" seizure, involving rapid jerking movements of the right side of her body, beginning with her arm and spreading to her leg and finally her face. The claimant became unresponsive after this episode, and she had another similar seizure roughly an hour later.

Four or five weeks after the incident at work the claimant began suffering from "drop attacks," brief seizures in which she lost control, coherence and consciousness for about seven or eight seconds. These attacks increased in frequency until they occurred at a rate of approximately twelve times per hour. After two brain surgeries in early and late 1983 at a hospital at Dartmouth University in New Hampshire, including a corpus callosum section, the claimant's condition has improved to the extent that the attacks now occur three to five times an hour and last for about four or five seconds. The referee found that the claimant has been totally disabled from the date of her fall "to the present and continuing ... ."

## 1. Basis for Conclusion of Work-Related Injury

The employer first argues that the board erred by stating, "The referee found as a fact that the claimant was injured on February 3, 1981 at [the employer's] place of employment when she tripped on the rung of a chair and

fell to the floor, striking her head ... ." As the employer points out, the referee, while reciting the factual basis for his conclusion that the claimant's head injury was one arising in the course of employment and related thereto within the meaning of section 301(c) of The Pennsylvania Workmen's Compensation Act (Act),[2] actually stated in Conclusion of Law No. 4 that the claimant

> either tripped while arising from the chair causing her to fall and strike her head against the floor, being an injury sustained when Claimant was actually engaged in the furtherance of the business or affairs of the employer and upon the employer's premises, or Claimant seized or fainted when engaged in her employment and upon the employer's premises causing her to fall and strike her head against the floor, the floor being a condition of the employer's premises ... .

However, the employer fails to note that the board effectively cured its misstatement as to tripping by quoting the referee's statement from his findings that the exact sequence of events that caused the claimant to fall to the floor was "extremely difficult to determine," and noting that the referee nevertheless found that the fall (and therefore the head injury) was work-related. In other words, the board understood that the referee concluded that this was a work-related injury regardless of whether the claimant tripped and fell or suffered a seizure or fainting spell and then fell. Therefore, the precise cause of the fall was not a fact that the referee necessarily had to determine.[3]

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §411(1).

[3] The question of whether the claimant's injury from her fall was work-related is analytically separate from the question of whether that injury caused the disability. *See* Part 2, *infra*.

Section 301(c)(1) of the Act provides in pertinent part:

The term 'injury arising in the course of his employment,' as used in this article ... shall include all ... injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

In *Workmen's Compensation Appeal Board v. United States Steel Corp.*, 31 Pa. Commonwealth Ct. 329, 376 A.2d 271 (1977), this court considered the above language in detail. In that case an employee who was in his car in his employer's parking lot before the start of his work shift suffered an epileptic seizure that caused him to lose control of his vehicle, ultimately crashing it into a concrete abutment on the employer's property, causing his death. This court explained the two ways in which an injury may meet the requirements of section 301(c)(1):

The statute requires that an injury to be compensable must: (1) arise in the course of employment and (2) be related thereto. ... Injuries may be sustained in the course of employment in two distinct situations: (1) where the employee, whether on or off the employer's premises, is injured while actually engaged in the furtherance of the employer's business or affairs, or (2) where

the employee although not actually engaged in the furtherance of the employer's business or affairs (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on his employer's premises; and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. ... The phrase 'and related thereto' which follows 'arising in the course of his employment' was added by the 1972 amendments referred to earlier. The same legislation removed the formal requirement of Section 301 that the injuries be the result of accident. The combined effect of the two changes is to make all injuries compensable if they are work-related.

*United States Steel Corp.*, 31 Pa. Commonwealth Ct. at 333, 376 A.2d at 273 (citations omitted).

The employee in *United States Steel Corp.* was not engaged in the furtherance of his employer's business because he had not yet begun his work shift. Nevertheless, this court held that his death was compensable under the second situation: the employee was on the employer's premises; he was required by the nature of his employment to be there; and his injuries were caused by a condition of the premises—the concrete abutment. In so holding, we expressly rejected the employer's argument that where an injury is found to be caused by condition of the employer's premises, the condition must be the result of faulty arrangement or maintenance of the premises or negligent conduct of the employer's affairs thereon. We emphasized the point that concepts of fault and negligence are foreign to the purpose of workers' compensation legislation to afford compensation to injured workers regardless of the employer's fault.

The employer here concedes that if the claimant tripped and fell, then her injury was work-related. However, the employer argues that if the claimant had a seizure that caused her to fall, then the case would be better analyzed under the reasoning of Judge BLATT'S thoughtful dissent in *United States Steel Corp.* or under this court's reasoning in *Anzese v. Workmen's Compensation Appeal Board (Strick Corp.)*, 35 Pa. Commonwealth Ct. 256, 385 A. 2d 625 (1978). Judge BLATT argued in dissent in *United States Steel Corp.* that where an injury comes under the "condition of the premises" branch of section 301(c)(1), then the substantial factor in causing the injury should be identified, and compensation awarded only if the substantial factor is work-related. In Judge BLATT'S view, the substantial factor in that case was the epileptic seizure rather than the structure into which the employee crashed. In response to this argument by the employer we need only point out that Judge BLATT'S dissenting position has never become the majority position of this court. *See, e.g., Penn Pad Co. v. Workmen's Compensation Appeal Board (Altholz)*, 83 Pa. Commonwealth Ct. 490, 478 A. 2d 497 (1984).

In *Anzese* this court concluded that an employee's death caused by his being struck by lightning while on his motorcycle in his employer's parking lot was *not* a work-related injury because it was not caused by a condition of the premises. The employer argues here that the floor of the employer's workshop, on which this claimant struck her head, was a "natural" condition of the employer's premises.

The facts of this case are closer to those of *United States Steel Corp.* than to those of *Anzese*. Even if it were proved here that the claimant's fall was caused by a seizure (and the employer does not claim to have proved that), the *injury* that she sustained was the result of her

striking her head on the particular floor in her workplace. *United States Steel Corp.* contains no hint that the abutment into which the employee in that case crashed was a more "unnatural" condition of the premises than any other structure, or part of a structure, such as a floor.

In summary, the board did not concoct a necessary finding of fact that the referee had failed to make, and the referee's conclusion, affirmed by the board, that the injury to this claimant was work-related within the meaning of section 310(c)(1), is consistent with this court's interpretations of that statute.

## 2. Work-Related Injury as the Cause of Disability

The employer's next argument goes to the evidentiary basis for the referee's conclusion that the trauma of the claimant's head injury caused the later uncontrollable seizures that render her disabled. The employer asserts that the claimant's medical expert, Dr. John E. Castaldo, in arriving at his opinion that the claimant's head injury caused her disability, rejected some testimony that the referee accepted. Therefore, the employer contends, the medical expert's opinion could not form the basis for the referee's finding that the head injury caused the disability.

The testimony in question relates to the doctor's opinion concerning the amount of time during which the claimant must not have been breathing in order for her skin to turn the bluish color that both the workroom supervisor and the program manager said they observed. Dr. Castaldo testified that approximately two minutes without oxygen must pass before one's skin turns blue. The workroom supervisor testified that she did not see the claimant fall, but that on hearing the cries of the other workers she went immediately to where the claimant was

lying on the floor. The pertinent part of the referee's Finding of Fact No. 15 is as follows:

> [T]he Referee finds it to be highly unlikely that the work floor supervisor in the room at the time of the Claimant's fall took more than a few seconds to traverse from the front of the room to the back of the room where Claimant fell, and highly unlikely that in excess of two minutes elapsed from the time Claimant fell to when the work floor supervisor observed Claimant bluish in color, wherefore it appears to the Referee that either Claimant had fallen and was lying on the floor for some undetermined period of time but a period of minutes before someone noticed Claimant on the floor, or Claimant was seizing silently or fainted or was fainting with resultant inadequate respiration before she fell, but under any scenario the Referee accepts the expert medical opinion of Dr. Castaldo that the severity of the head injury in striking the floor in combination with the loss of respiration was the precipitant which ignited Claimant's many seizures later on, and the insults of the head trauma when striking the floor and the hypoventilating subsequently turned Claimant's stable state into one of uncontrollable seizures and Claimant was and remains incapable of employment.

As the claimant points out in her brief, the doctor did not reject testimony that the referee accepted. Rather, the referee made an effort to accommodate both the factual testimony from the people at the scene of the event and the medical opinion testimony from an expert who interpreted that testimony.

In addition to testimony relating to the fall itself, the referee had before him Dr. Castaldo's testimony that the sudden onset of incapacitating seizures at the claimant's age, without any previous history of seizures, does not fit any of the three medically recognized categories of epilepsy resulting from prenatal injury. Dr. Castaldo also testified that the "focal" or localized seizures that the claimant experienced within an hour of her fall are consistent with localized injury to the brain, such as a contusion caused by the trauma of the head injury, and are completely inconsistent with the onset of epilepsy resulting from injury from the time of birth.

The employer's medical expert testified as to his opinion that the claimant's seizures were not caused by her head injury at work. As this court has repeatedly stated, the referee may reject the testimony of even an expert, and the task of resolving conflicts in testimony is for the referee, not for this court. *Wertz v. Workmen's Compensation Appeal Board (Ferro Corp.)*, 90 Pa. Commonwealth Ct. 515, 496 A.2d 90 (1985).

As noted above, the issue before this court is whether the findings of the referee were supported by substantial evidence. In our view the referee had before him at least such evidence as a reasonable person might accept as adequate to support the conclusion that the claimant's head injury resulting from her fall at work caused the uncontrollable seizures that render the claimant disabled. The board's conclusion to that effect was correct.

Accordingly, we shall affirm the decision of the Workmen's Compensation Appeal Board.

ORDER

NOW, March 17, 1989, the order of the Workmen's Compensation Appeal Board at Docket No. A-93808, dated May 13, 1988, is affirmed.