**PPL, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KLOSS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 21, 2014.

Decided June 11, 2014.

---

Elizabeth H. Marcon, Center Valley, for petitioner.

Quintes D. Taglioli, Allentown, for respondent Carol Kloss.

BEFORE: LEADBETTER, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

PPL (Employer) petitions for review of the August 21, 2013 order of the Workers' Compensation Appeal Board (Board),

which affirmed the decision of a workers' compensation judge (WCJ) granting the claim petition filed by Carol Kloss (Claimant). We reverse.

Employer employed Claimant for approximately thirty years, with her most recent job as steno clerk. Claimant worked in Employer's North Building, located at Two North Ninth Street, Allentown, Pennsylvania. The North Building sits behind Employer's Tower, which stands approximately twenty-three stories high and is located at the corner of Ninth and Hamilton Streets. A multi-level parking garage, the Linden Street Parking Deck (Linden Deck), sits to the west of the North Building. The Linden Deck is served by stairs and elevators and the third floor (Level C) connects directly with the North Building via an enclosed skywalk.[1] (Finding of Fact No. 1.)

Employer maintains a parking program for its employees via a series of agreements with the owner of the Linden Deck and the Allentown Parking Authority, which operates a parking garage known as the Spiral Deck located less than a block to the east of the North Building. The Linden Deck is owned by a limited partnership in New York. The owner of the Linden Deck is responsible for its maintenance.[2] The Linden Deck is used

1. The map below was submitted as Exhibit C–1 at the WCJ's hearing held on June 10, 2010. The letter "N" represents the North Building. The letter "P" represents the Linden Deck. The references to "IN" and "OUT" represent the vehicle entrance and exit of the Linden Deck and the upside down "E" represents the approximate location of the Linden Deck elevators. The "XX–3rd LEVEL" marking represents the area where the skywalk was located, i.e., the third floor, or Level C, of the Linden Deck. The letter "X" near North Fountain Street represents a pedestrian access door to the lower level of the Linden Deck.

exclusively by Employer's employees and employees of the nearby KNBT Bank. However, Employer's employees use the vast majority of the 1,100 parking spaces at the Linden Deck. (Findings of Fact Nos. 2–3.)

Employer's parking program is a subsidized program which allows employees to pay $24.00 per month to park at the Linden Deck. Employer contributes the remainder of the cost, which is paid to the owner of the Linden Deck. The parking spots are assigned to employees on a first come, first serve basis. The Linden Deck does not offer public parking and employees can only gain access through the use of a magnetic swipe card issued by the owner of the Linden Deck. The Linden Deck is separated from the North Building by Fountain Street, a public street. Another public street, Court Street, separates the North Building and the Tower. The skywalk, which is owned by Employer, connects the Linden Deck and the North Building and bridges Fountain Street. The North Building is also connected to the Tower via a smaller structure that bridges Court Street. (Findings of Fact Nos. 4–6.)

On December 15, 2009, Claimant used her swipe card and drove into the Linden Deck. Claimant parked on the second floor (Level B), walked to a glass-enclosed area, and took the elevator to Level C. Claimant proceeded across the skywalk and into the North Building. After her shift had ended, Claimant exited the North Building onto a sidewalk that ran parallel with Linden Street. She crossed over Fountain Street and used her swipe card to gain access to the lower level of the Linden Deck. As Claimant was approaching the elevator inside the Linden Deck, she tripped and fell to the ground, injuring her right arm and shoulder. Claimant was

2. The WCJ found that Employer contracts with a security company to provide security for the Linden Deck. (Finding of Fact No. 2.) However, the record reveals that the security company contracts directly with the owner of the Linden Deck. (Reproduced Record (R.R.) at 206a–07a.)

unable to return to work. (Findings of Fact Nos. 6–7, 12.)

On January 5, 2010, Employer issued Claimant a notice of workers' compensation denial alleging that Claimant did not sustain a work-related injury within the course and scope of her employment. Claimant thereafter filed a claim petition against Employer alleging that she sustained injuries to her right arm and head as a result of her fall in the course and scope of her employment. Employer filed an answer denying the allegations of Claimant's petition. The petition was assigned to a WCJ. The parties agreed to bifurcate the proceedings and the WCJ first heard evidence relating to the course of employment issue.

Claimant testified as to the facts described above relating to Employer's parking program and her fall in the Linden Deck. Claimant stated that there were three different ways to exit her building and return to the Linden Deck: (1) exit through the main lobby of Employer's Tower, proceed up North Ninth Street to either Linden or Court Streets, and access a stairwell at the Linden Deck with a swipe card; (2) exit the North Building and use a swipe card to go back across the skywalk and into the Linden Deck at Level C; or (3) exit the North Building on Linden Street, turn left on Fountain Street, and use a swipe card to gain access to a lower level of the Linden Deck (the path she chose on the day she was injured). (R.R. at 146a–48a.)

Claimant testified that after her fall, her head was bleeding and her right arm felt broken. A co-worker came to her aid and, thereafter, Claimant received emergency treatment at Lehigh Valley Hospital, including three staples to close her head wound and surgery on her right arm. The surgery was performed by Scott Sexton, M.D., a physician with VSAS Orthopaedics in Allentown. Claimant subsequently was placed under the care of Neal Stansbury, M.D., a colleague of Dr. Sexton at VSAS Orthopaedics, for ongoing pain in her right shoulder. (R.R. at 158a–63a.)

On cross-examination, Claimant stated that she has had pain in her right arm and shoulder since the date of her accident. Claimant denied experiencing any arm or shoulder pain prior to this time. Upon questioning from the WCJ, Claimant testified that she was unable to return to work because her job involves computer work and she is unable to keep her arm raised long enough to complete her regular job duties. Claimant noted that her fall occurred within ten minutes after her shift had ended. Claimant acknowledged that there are other parking garages and metered street parking near her building. Claimant also stated that Employer deducts money from her paycheck for parking and that she obtained her spot through a lottery offered by Employer following construction of the Linden Deck. (R.R. at 175a–81a.)

Employer presented the testimony of Robert Horner, Jr., Employer's director of corporate facilities. In this capacity, Horner is responsible for the operation, maintenance, and construction/renovation of Employer-owned office buildings, warehouses, and service centers. Horner testified that Employer provides a subsidy for parking to the 2,300 to 2,400 employees who work in Employer's general office complex in Allentown. In other words, the employees pay a reduced monthly rate of $24.00 and Employer pays the remainder pursuant to agreements between Employer and the owners of nearby parking garages. Horner noted that Employer has agreements with the owner of the Linden Deck and the Allentown Parking Authority, which operates a garage known as the Spiral Deck to the east of the office complex. Horner stated that employees are

not required to park in either facility, but these are the only facilities for which the subsidy is available. Horner also stated that Employer provides a subsidy program for public bus transportation with the Lehigh and Northampton Transportation Authority. (R.R. at 191a–97a.)

Horner noted that Employer is not the sole occupant of the Linden Deck. Horner stated that the Linden Deck has a single vehicle entrance consisting of two lanes, two vehicle exits, and four pedestrian entrances, including the skywalk. Horner testified that the owner of the Linden Deck provides swipe cards for use at the vehicle entrance, but he acknowledged that in cases where an employee forgets this swipe card, the employee can call security, a contracted guard service hired by the Linden Deck owner, and swipe his/her Employer identification card to gain entry. Horner also noted that employees can use their Employer identification cards to gain access to the pedestrian entrances and the Linden Deck vehicle entrance any weekday from 6:00 p.m. to 6:00 a.m., and anytime on weekends. (R.R. at 198a–208a.)

Horner testified that Employer does not own or have any responsibilities with respect to the custody, control, or maintenance of the Linden Deck. However, Horner further testified that Employer reimburses the owner of the Linden Deck for its proportionate share of the maintenance and operation costs for the same. For example, Horner explained that if Employer rents ninety percent of the spaces in the Linden Deck, Employer reimburses the owner ninety percent of the electric bill. Horner noted that he authorizes monthly reimbursements to the owner of the Linden Deck for such costs. Horner stated that the owner of the Linden Deck has reserved parking spaces for KNBT Bank and future tenants of the nearby Plaza Building, which it also owns.[3] Employer currently utilizes the future-tenant spaces with the proviso that they will be returned to the owner should a future tenant materialize. (R.R. at 198a, 211a–16a.)

On cross-examination, Horner acknowledged that KNBT is the only entity other than Employer currently using the Linden Deck and that Employer utilizes the majority of the 1,110 to 1,120 spaces available there. Horner described the Linden Deck as the more desirable parking area based on its proximity to the North Building and the Tower. In fact, Horner testified that Employer maintains a waiting list for the Linden Deck and assigns parking spots on a first-come, first-served basis. Horner conceded that Employer owns the skywalk that connects the Linden Deck and the North Building and that the skywalk is only accessible with an Employer identification card. Finally, upon questioning by the WCJ, Horner stated that the Linden Deck is not available to members of the public. (R.R. at 217a–30a.)

By interlocutory decision and order dated February 7, 2011, the WCJ concluded that Claimant was within the course and scope of her employment with Employer at the time of her injury. Subsequent to this decision and order, Claimant testified again before the WCJ. Claimant stated that ninety percent of her job involved entering dollar figures and typing comments with a keyboard. Claimant testified that she tried making adjustments with her home computer, such as placing the keyboard in her lap, but that the position still bothered her arm. Claimant also noted that she would not be productive if she had to enter these figures with her left hand. On cross-examination, Claimant stated that she tried other keyboards, in-

---

**3.** The Plaza Building is located across the street to the east of Employer's Tower. (R.R. at 213a.) KNBT Bank leases a portion of this building. (R.R. at 216a.)

cluding an ergonomic version, but her arm was still uncomfortable. Claimant noted that she had a functional capacity evaluation performed in August 2011, but she denied that this evaluation revealed she could perform her pre-injury position. Claimant also testified that ongoing problems with her right arm prevent her from being able to perform that job. (R.R. at 239a–48a.)

Claimant also presented the April 12, 2011 deposition testimony of Dr. Stansbury, who is board-certified in orthopedic surgery. Dr. Stansbury testified that he first saw Claimant on June 1, 2010, at which time he diagnosed her with postoperative adhesive capsulitis of her right shoulder, otherwise known as a frozen shoulder. Dr. Stansbury noted that his colleague, Dr. Sexton, performed surgery on December 17, 2009, to repair a broken humerus in Claimant's right arm, which surgery included the insertion of a plate and screws to hold the bone together. Dr. Stansbury stated that the arm was immobilized for an extended period to protect the break and promote healing. (R.R. at 93a–96a.)

Dr. Stansbury testified that once the break was sufficiently healed, Claimant began a period of physical therapy, but her shoulder problems continued. Subsequent tests revealed a partial thickness tear in Claimant's rotator cuff. Dr. Stansbury performed shoulder surgery on September 24, 2010, to repair this tear and remove scar tissue in an effort to loosen her shoulder. Claimant thereafter resumed physical therapy. Dr. Stansbury noted that while Claimant's condition had improved, she had not achieved full motion of her shoulder. Dr. Stansbury opined that Claimant's right shoulder problems were related to her December 15, 2009 fall. Dr. Stansbury also stated that he has not released Claimant to return to work. (R.R. at 96a–105a.)

On cross-examination, Dr. Stansbury conceded that he was concerned that Claimant had not been stretching her right shoulder enough on her own as he directed and that he expected her condition would be significantly better by September 2011, a year after her shoulder surgery. Dr. Stansbury opined that Claimant had recovered from the rotator cuff tear, but that the range of motion in her right shoulder remains below normal. On re-direct examination, Dr. Stansbury testified that he did not believe Claimant could hold her arms forward all day long reaching toward a keyboard. (R.R. at 112a–19a.)

Employer did not present any additional testimony or medical evidence. By decision and order dated February 1, 2012, the WCJ granted Claimant's claim petition, concluding that Claimant had established, by competent, credible evidence that she was totally disabled as a result of the injuries she sustained in the course and scope of her employment on December 15, 2009. Regarding the course and scope of employment issue, the WCJ found as follows:

> The restricted-use parking lot was physically connected [sic] the employer's premises. The restricted-use parking privilege was subsidized by the employer for the benefit of its employees. The location where claimant fell was integral to the employer's premises and was a reasonable means of access.

(Finding of Fact No. 10.) Employer appealed to the Board, which affirmed. The Board agreed with the WCJ that the area where Claimant was injured could be considered an integral part of Employer's business, citing *Markle v. Workers' Compensation Appeal Board (Bucknell University)*, 785 A.2d 151 (Pa.Cmwlth.2001). The Board rejected an argument by Employer that the outcome of this case is controlled by *Ortt v. Workers' Compensa-*

*tion Appeal Board (PPL Services Corp.),* 874 A.2d 1264 (Pa.Cmwlth.2005), concluding that *Ortt* was factually distinguishable.

On appeal to this Court,[4] Employer argues that the Board erred as a matter of law in affirming the WCJ's conclusion that Claimant was injured in the course and scope of her employment. More specifically, Employer argues that: the fact that Employer provided subsidized parking is immaterial to a determination of whether the Linden Deck constituted Employer's premises; Claimant failed to establish that her injuries resulted from a condition of the premises; and Claimant failed to establish that the Linden Deck was in fact integral to Employer's business. We agree.

■ Section 301(c)(1) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1), provides as follows:

The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury. The term 'injury arising in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person in-

tended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; nor shall it include injuries sustained while the employe is operating a motor vehicle provided by the employer if the employe is not otherwise in the course of employment at the time of injury; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include **all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.**

(Emphasis added). Whether an employee is injured in the course of employment is a question of law to be determined on the basis of the WCJ's findings of fact. *Markle.*

■ Generally, injuries that occur while commuting to or from a place of work are not considered to occur in the course of employment. *Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency),* 528 Pa. 279, 597 A.2d 1116, 1119 (1991). However, a claimant is entitled to benefits if he is injured "on the employer's 'premises' at a reasonable time before or after the work period." *New-*

---

4. Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S.

§ 704. Substantial evidence is such evidence as a reasonable mind might find adequate to support a conclusion. *Bethenergy Mines, Inc. v. Workers' Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434, 436 (1992).

*house v. Workmen's Compensation Appeal Board (Harris Cleaning Service, Inc.),* 109 Pa.Cmwlth. 96, 530 A.2d 545, 547 (1987).[5] In this situation, the claimant must prove all of the following:

> [the employee] (a) is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on his employer's premises; and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Workmen's Compensation Appeal Board (Slaugenhaupt) v. United States Steel Corp.,* 31 Pa.Cmwlth. 329, 376 A.2d 271, 273 (1977).

■ Pennsylvania courts have held that an employer's "premises" is not necessarily limited to buildings or property controlled, occupied, or owned by the employer. *Waronsky v. Workers' Compensation Appeal Board (Mellon Bank),* 958 A.2d 1118 (Pa.Cmwlth.2008). Rather, the term "premises" can encompass property that "could be considered an integral part of the employer's business." *Ortt,* 874 A.2d at 1267. Property becomes integral to an employer's business when the employer requires employees to use that property. *Id.* at 1267–68. Moreover, we have held that "the critical factor is not the employer's title to or control over the area, but rather the fact that ... [the employer] had caused the area to be used by ... employees in performance of their assigned tasks." *Waronsky,* 958 A.2d at 1125 (quoting *Epler v. North American Rockwell Corporation,* 482 Pa. 391, 393 A.2d 1163, 1167 (1978)).[6]

■ Employer first asserts that the fact that Employer provided subsidized parking is immaterial to a determination of whether the Linden Deck constituted Employer's premises. We conclude that our decision in *Ortt* supports Employer's argument. In *Ortt,* the employer leased parking spaces in a commercial parking lot

---

5. In *Newhouse,* the employer provided janitorial services at the Westinghouse Research and Development Center (Center). The Center provided the employer with office space at its plant and parking in a lot adjacent to the plant. A private access road connected the lot to a public roadway and was the only way to reach the lot. The claimant sustained a severe brain injury when he fell from the hood of a co-worker's car and struck his head on the private access road as the co-worker was giving the claimant and another co-worker, both of whom walked to work, a ride to the public roadway. This Court concluded that the claimant's injury occurred on the employer's premises, noting that the private access road was "the only means of egress by which employees could reach a public roadway." 530 A.2d at 547. We also concluded that the injury, incurred fifteen minutes after punching out, was within a reasonable time after the claimant's work period.

6. In *Epler,* the claimant was struck and killed while crossing a public road to reach his car in a parking lot specifically provided by the employer. Our Supreme Court concluded that the claimant was on the employer's premises at the time he was fatally injured, stressing that the parking lot was an integral part of the employer's business because the municipality in which the employer's plant was located had banned on-street parking in the vicinity of the plant, thereby requiring the employer to provide off-street parking facilities for its employees. Additionally, the Court noted that the employer maintained two lots and employees were subject to discipline if they did not park in the lot to which they were assigned by the employer. Further, the Court refused to recognize a distinction between accidents occurring on public roads versus private roads. In this regard, the Court stated that employing such a distinction "would place undue significance upon a fact that should not here be controlling." 393 A.2d at 1166. The Court concluded that "actual ownership of an area is not necessarily determinative" of the real question of whether "the site of the accident was an integral part of employer's premises." *Id.*

owned and operated by a third party and gave employees the option of renting a space at a reduced rate. The employer did not require its employees to rent a space in this lot and, in fact, had similar lease arrangements with at least three other lots. The owner of the lot agreed in the lease to be responsible for maintaining the premises, including the removal of snow and ice. The claimant chose to rent a space in this lot and sustained injuries when she slipped and fell on accumulated ice and snow in the lot after working an overtime shift.

We concluded in *Ortt* that the parking lot was not an integral part of the employer's business because: the claimant was not required to park in that particular lot, i.e., use of the lot was purely optional and was neither required nor integral to the claimant's employment; the lot was owned and operated by a private company; and the claimant paid for at least a part of her own parking space. We described the payment by the employer to reserve a spot for its employees, who had the option of seeking a parking spot based on availability, as "at most a mere benefit of employment, no different than an agreement by an employer to pay portions of health insurance costs of an employee." *Id.* at 1268. Thus, we held that the claimant's injury did not occur on the employer's premises.

Similarly, in this case, Employer did not require Claimant or any other employee to park in the Linden Deck; rather, parking in this lot was optional and subject to availability. Additionally, Employer's offer was not limited to parking in the Linden Deck. The record reflects that Employer offered subsidized parking in the Spiral Deck, less than a block away from Employer's North Building, as well as a subsidy for public bus transportation. Nevertheless, consistent with *Ortt*, we conclude that these subsidies merely represented a benefit of employment and do not render the Linden Deck, the Spiral Deck, or a public bus a part of Employer's premises.

█ Employer next asserts that Claimant failed to establish that her injuries resulted from a condition of the premises, noting Claimant's testimony that she tripped over her own feet. While Employer acknowledges that Claimant was not required to show that her injury resulted from a faulty condition or Employer's negligent operations, Employer asserts that there must be some condition of the premises that contributed to the cause of the injury. We agree.

Claimant contends that Employer seemingly confuses the cause of her injury with the cause of her fall, citing *Thomas Jefferson University Hospital v. Workmen's Compensation Appeal Board (Cattalo)*, 144 Pa.Cmwlth. 302, 601 A.2d 476 (1991), and *Good Shepherd Workshop v. Workmen's Compensation Appeal Board (Caffrey)*, 124 Pa.Cmwlth. 262, 555 A.2d 1374 (1989). In *Thomas Jefferson University Hospital*, the claimant sustained injuries when she fell down several stairs in one of the employer's buildings. The claimant had worked in the employer's Martin Building, but fell in the New Hospital Building while on her way to purchase tokens for a nearby parking lot. The tokens allowed her to park in this lot at a discounted rate and were only sold in the New Hospital Building. The employer argued, *inter alia,* that there was no evidence that the claimant's injuries were caused by a condition of the premises. This Court rejected the employer's argument, stating that the WCJ properly concluded that the stairs constituted a condition of the employer's premises.

In *Good Shepherd Workshop*, the claimant sustained injuries when she fell at her work station and struck her head on the

floor. The reason for the claimant's fall was unclear; the WCJ noted that she either tripped while getting up from her chair or she either fainted or suffered a seizure which caused her to fall from her chair. The employer argued that if the claimant suffered a seizure and fell, she would not be entitled to compensation because the substantial factor in causing her injury was not work-related. This Court rejected the employer's argument, noting that even if the claimant's fall resulted from a seizure, the injuries she sustained resulted from her striking her head on the floor in her workplace. Further, we stated that "the precise cause of the fall was not a fact that the [WCJ] necessarily had to determine." *Id.* at 1377.

However, in both *Thomas Jefferson University* and *Good Shepherd Workshop*, the claimants indisputably sustained injuries while on the employers' premises. In the present case, Claimant admitted that she "tripped over [her] feet and fell" while walking to the elevator in the parking garage adjacent to Employer's premises. (R.R. at 158a.) Hence, as will be discussed in greater detail below, Claimant's injuries did not occur on Employer's premises.

Employer also contends that the WCJ erred in concluding that the Linden Deck was integral to Employer's business such that it became a part of Employer's premises. Our previous decisions in *Ortt* and *Waronsky* support Employer's contention. As noted above, the employer in *Ortt* leased parking spaces in a commercial parking lot owned and operated by a third party and gave employees the option of renting a space at a reduced rate. The employer did not require its employees to rent a space in this lot and, in fact, had similar lease arrangements with at least three other lots. The owner of the lot was responsible for maintaining the premises, including the removal of snow and ice.

The claimant chose to rent a space in this lot and sustained injuries when she slipped and fell on accumulated ice and snow in the lot after working an overtime shift. Based on these facts, we concluded that the parking lot in which the claimant fell was not an integral part of the employer's business, and, hence, was not part of the employer's premises.

In *Waronsky*, a claimant was hit by a car while crossing the street between the employer's office and the employer's parking garage. The employer did not require employees to park in the garage, but it did provide tax incentives for parking there. The employer in *Waronsky* neither issued parking directives nor exercised control over the claimant's preferred mode of transportation, and we emphasized in *Waronsky* that the claimant "was free to park her vehicle where she chose." *Waronsky*, 958 A.2d at 1125. Thus, we determined that the street between the garage and the claimant's office was not integral to the employer's business, and, relying on *Ortt*, we held that the claimant was not on the employer's premises at the time of her injury.

The facts of the present case are nearly indistinguishable from those of *Ortt* and *Waronsky*. In this case, Employer leased parking spaces in a commercial parking lot, the Linden Deck, which is owned and operated by a third party, and gave employees the option of renting a space at a reduced rate. Employer did not require its employees to park in the Linden Deck and, in fact, had similar lease arrangements with at least one other lot as well as a subsidy program for those employees who opted to use public bus transportation. Employer was not the sole occupant of the Linden Deck. Employer had no responsibilities with respect to the custody, control, or maintenance of the Linden Deck; rather, the owner of the lot was responsible for

maintaining the premises, controlling access thereto, and providing security via a contracted guard service.

Moreover, while the WCJ, the Board, and Claimant place great emphasis on Employer's construction of a skywalk connecting the Linden Deck and the North Building, the existence of the skywalk is simply not a determinative factor in this case given the factors described above. The skywalk is nothing more than an added convenience for employees who choose to rent a space in the Linden Deck.

Claimant relies on this Court's recent decisions in *ICT Group v. Workers' Compensation Appeal Board (Churchray-Woytunick)*, 995 A.2d 927 (Pa.Cmwlth. 2010), and *Thompson v. Workers' Compensation Appeal Board (Cinema Center)*, 981 A.2d 968 (Pa.Cmwlth.2009), as support for the Board's decision. However, such reliance is misplaced as these cases are factually distinguishable from the present case. In *ICT Group*, the claimant worked in an office park where the employer leased multiple buildings. The claimant regularly parked her car in a parking lot situated between her workplace and another building leased by the employer. On February 16, 2007, the claimant slipped on ice and fell backwards to the ground as she was walking to her car during her lunch break, injuring her neck, back, and legs. The claimant subsequently filed two claim petitions and the employer denied that she had sustained a work-related injury.

The WCJ granted these petitions, concluding that the claimant sustained her injuries on the employer's premises in the course and scope of her employment, and the Board affirmed. On appeal, the employer argued that the parking lot was not part of its premises, noting that: it neither owned nor leased the parking lot; it shared the parking lot with other tenants of the office park; use of the parking lot was optional; and employees had a number of public transportation options at their disposal. Citing *Newhouse*, we held that the parking lot was an integral part of the employer's business and, hence, part of the employer's premises, because it was a reasonable means of access to the claimant's workplace. Further, we noted that the area where the claimant parked was reserved for the employer's employees and that employees would regularly cross the parking lot to go between the employer's buildings.

In *Thompson*, the claimant worked in a movie theater located in a strip mall. The theater was located at the end of the strip mall and employees were permitted to park anywhere in the mall's parking lot. On February 12, 2007, the claimant tripped and fell while walking to her car after work, fracturing her left arm near her shoulder. The claimant filed a claim petition and the employer denied that she sustained a work-related injury. The WCJ granted the petition, concluding that the claimant was injured on the employer's premises in the course and scope of her employment. The WCJ noted that the claimant's presence was required by the nature of her employment because she was required to traverse the sidewalk and the parking lot to reach her car. The Board affirmed. The claimant appealed, seeking a reversal of the WCJ's decision insofar as he failed to award attorney fees for an unreasonable contest.

In addressing this issue, this Court reviewed whether the area where the claimant fell was part of the employer's premises. We addressed our previous decisions in *Ortt* and *Waronsky*, noting that "the mere fact that the employer leases or even owns a parking lot or garage where the employee was injured is not dispositive of the question of whether a parking area is part of the employer's 'premises.'" *Thompson*, 981 A.2d at 974. Instead, we

stated that "[s]uch a determination requires an examination of many other facts, such as the employer's requirements on parking." *Id.*

In this case, the record reflects that the only spots reserved in the Linden Deck were for current and future tenants of the nearby Plaza Building, which is also owned by the owner of the Linden Deck. Additionally, the Linden Deck was not situated between separate buildings leased by Employer such that employees regularly crossed the parking area as in *ICT Group.* Further, our decision in *Thompson* did not reach any conclusions as to the propriety of the WCJ's conclusion that the claimant was injured on the employer's premises. Rather, we simply concluded that a genuinely disputed issue existed as to whether the claimant was injured on the employer's premises such that the Board did not err in affirming the WCJ's decision insofar as he found the employer's contest to be reasonable and declined to award attorney fees to the claimant.

Because the injuries suffered by Claimant occurred on a private parking lot, owned and operated by a third party, who was responsible for its control and maintenance, and Claimant was not required to park in the Linden Deck, we cannot agree that the Linden Deck was so integral to Employer's business that it constituted a part of Employer's premises such that Claimant was injured in the course and scope of her employment. *Waronsky; Ortt.*

Accordingly, the order of the Board is reversed.

### *ORDER*

AND NOW, this 11th day of June, 2014, the order of the Workers' Compensation Appeal Board, dated August 21, 2013, is hereby reversed.

DISSENTING OPINION BY Senior Judge FRIEDMAN.

Because I disagree with the majority's conclusion that Carol Kloss (Claimant) failed to establish that the Linden Street Parking Deck (Linden Deck) was integral to PPL's (Employer) business and failed to establish that her injuries resulted from a condition of the premises, I respectfully dissent. Accordingly, I would affirm the order of the Workers' Compensation Appeal Board (WCAB).

Initially, the majority holds that Employer's subsidization of parking at the Linden Deck is immaterial to determining whether the Linden Deck constituted Employer's premises. To me, this holding unnecessarily restricts our inquiry to whether an area is "on the employer's premises" within the meaning of the Workers' Compensation Act (Act).[1] *See Epler v. North American Rockwell Corporation,* 482 Pa. 391, 393 A.2d 1163, 1167 (1978) ("[T]he critical factor is not the employer's title to or control over the area, but rather the fact that [the employer] had caused the area to be used by [ ] employees in performance of their assigned tasks."). While not dispositive of the issue, the availability of parking subsidies is relevant to whether the parking facilities are an integral part of an employer's business. One can easily imagine a situation in which the parking subsidies provided by an employer are an economic enticement sufficient to compel the employee to park at the subsidized location. How would such a subsidy be different in function than a policy mandating where the employee should park, such as the directive in *Epler? See id.* at 1167 ("It is sufficient if the employee is required to be in the area because of the employment.").

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

Unfortunately, this court's decisions in *Ortt v. Workers' Compensation Appeal Board (PPL Services Corp.)*, 874 A.2d 1264 (Pa.Cmwlth.2005), and *Waronsky v. Workers' Compensation Appeal Board (Mellon Bank)*, 958 A.2d 1118 (Pa.Cmwlth. 2008), have foreclosed any inquiry into this potentially relevant detail. In those cases, this court lost sight of the basic principles that "[t]he automobile has become the universal means of transportation," [2] *Epler*, 393 A.2d at 1165, and that "all employer[-]provided parking programs are, to some extent, optional," *Ortt*, 874 A.2d at 1269 (Kelley, S.J., dissenting). An employee must get to work. When an employee drives to work, he or she must park the car and enter the workplace. While I understand that this is a problem of line-drawing, given the liberal and humanitarian construction of the Act, I would not define premises so narrowly that it excludes an essential part of every workday.

Examining the totality of the circumstances, including the parking subsidies that Employer offered, I would find that the Linden Deck was integral to Employer's business and, therefore, part of Employer's premises. Several factors distinguish the present case from *Ortt* and *Waronsky*: (1) the Linden Deck is physically connected via a skyway to the Employer's North Building and access to the Linden Deck requires a magnetic swipe card; (2) the Linden Deck is not open to the public and Employer's personnel utilize the vast majority of the spaces, with a few remaining spaces occupied by employees of Keystone Bank and Trust Company; and (3) the Linden Deck was one of only two lots for which Employer provided parking subsidies.

This case is more comparable to *ICT Group v. Workers' Compensation Appeal Board (Churchray–Woytunick)*, 995 A.2d 927 (Pa.Cmwlth.2010), wherein this court

found that the parking lot in question was part of the employer's premises. *See id.* at 931 ("[T]he parking lot in question was an integral part of Employer's business because it was a reasonable means of access to the workplace."). Thus, I would find that the Linden Deck was integral to Employer's business.

I also disagree with the majority's determinations that Claimant failed to establish that her injuries resulted from a condition of the premises and that a condition of the premises must contribute to the cause of the injury. Claimant was not required to show that her injury resulted from a faulty condition or Employer's negligence. *See Good Shepherd Workshop v. Workmen's Compensation Appeal Board (Caffrey)*, 124 Pa.Cmwlth. 262, 555 A.2d 1374, 1378 (1989) ("[C]oncepts of fault and negligence are foreign to the purpose of workers' compensation legislation to afford compensation to injured workers regardless of the employer's fault."). Rather, Claimant was merely required to show "that (1) the injury [ ] occurred on the employer's premises, (2) the employee's presence thereon was required by the nature of [her] employment, and (3) the injury was caused by the condition of the premises or by the operation of the employer's business thereon." *Thomas Jefferson University Hospital v. Workmen's Compensation Appeal Board (Cattalo)*, 144 Pa.Cmwlth. 302, 601 A.2d 476, 478 (1991). Claimant's injuries occurred because her head and shoulder struck the ground inside the Linden Deck, and the ground is a "condition of the premises." *See Good Shepherd*, 555 A.2d at 1378–79 (finding that the workplace floor was a "condition of the premises").

Because I believe that the WCAB correctly determined that Claimant was on Employer's premises and was injured by a

---

**2.** Although *Epler* was decided in 1978, I believe that this sentiment is no less true today.

condition of the premises, I would affirm the WCAB's order.