# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Bradley, Jr.,                          :
                     Petitioner            :
                                     :
             v.                            :  No. 1424 C.D. 2015
                                       :  Submitted:  January 8, 2016
Workers' Compensation Appeal           :
Board (TFI Resources, Inc.),            :
                     Respondent           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                  FILED: March 15, 2016

         Robert Bradley, Jr., (Claimant) petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board) denying him compensation benefits. The Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant's injury did not occur within the course and scope of his employment with TFI Resources, Inc. (Employer). Discerning no error, we affirm the Board.

         Employer is a temporary employment and job placement agency. In 2010, Claimant worked for Employer as a temporary administrative assistant at several different locations. In October 2012, he began working 35 hours per week at Vision Mortgage Capital (Vision) processing mortgage applications, for which he earned $560 per week. On January 28, 2013, while walking to his automobile during his lunch break, he slipped and fell, sustaining right leg injuries.

Claimant reported the injury to Employer on January 31, 2013. Employer issued a notice of compensation denial on February 1, 2013, asserting that Claimant was not injured within the course and scope of his employment. Claimant then filed a claim petition pursuant to the Workers' Compensation Act (Act),[1] alleging that he suffered a work-related injury to his right leg when he slipped and fell on January 28, 2013.

With the agreement of the parties, the WCJ bifurcated the proceeding to separate the factual question of the extent of Claimant's injury from the legal question of whether Claimant's injury was work-related. Claimant was the only party to present evidence on the legal question of whether he was injured in the course and scope of his employment.[2]

Claimant testified that Employer assigned him temporary jobs that could potentially lead to permanent work. Employer paid his salary. If a temporary job led to a permanent placement with the client, Employer would collect a placement fee from the client.

Prior to his fall, Claimant had been working at Vision for approximately three months. Vision's offices are located on the third floor of a four-story office building at 620 Germantown Pike on the Plymouth Meeting Executive Campus. The building is surrounded by concrete walkways and is bordered by trees and other vegetation. Walkways connect the buildings in the complex to each other and to outdoor parking lots.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.
[2] Employer did not present any evidence, but was represented by counsel at Claimant's deposition.

On the day of the fall, Claimant walked to his vehicle with the intention of driving to the Plymouth Meeting Mall for lunch. Claimant testified that after he left his building, he walked up a flight of stairs. From there, he walked approximately 10 feet before he slipped and fell on the icy walkway. Claimant explained that to get to his vehicle in the parking lot, he had to traverse the walkway where he fell and then climb a second flight of stairs to get to the parking lot.

Claimant testified that Vision is a "subsidiary of Continental Bank," which is also located on the third floor of the building where Claimant worked. Reproduced Record at 34 (R.R. __); Notes of Testimony, 8/6/2013, at 19 (N.T. __). Claimant submitted a copy of Continental Bank's lease with Brandywine Operating Partnership, L.P., which grants Continental the use of the "exterior paved driveways and walkways" and "parking areas" of the Plymouth Meeting Executive Campus. R.R. 50. Because Vision is a subsidiary of Continental Bank, Claimant maintained that he fell on Vision's premises. Claimant also submitted photographs of the location of his fall.

Following the accident, Claimant contacted "Brandywine Realty," the property manager of the Plymouth Meeting Executive Campus. R.R. 38; N.T. 36. Brandywine Realty referred him to its snow removal contractor, which subcontracts the work to various companies.

The WCJ credited Claimant's testimony about the location and circumstances of his fall. However, the WCJ concluded that Claimant's injury did not occur within the course and scope of Claimant's employment. The WCJ reasoned that at the time of his fall, Claimant was not furthering Employer's

3

business; he was on a lunch break. Further, the place where Claimant fell was not part of Employer's premises:

> Whether the area where Claimant fell … is part of the premises of [Vision] or some other entity is not necessary to decide and is irrelevant to the question of [Employer's] liability. The evidence in this matter does not show anything other than that Claimant had an optional parking choice in an area not owned or controlled by [Employer].

WCJ Decision, 4/8/2014, at 5; Finding of Fact No. 12. Accordingly, the WCJ denied the claim petition.

Claimant appealed to the Board. The Board explained that because Claimant was not furthering Employer's business when he fell, he had to prove that the fall occurred on premises under the control of Employer; that his employment required him to be at the location where he fell; and that the injury was caused by a condition of the premises. Concluding that Claimant did not fall on property under the control of Employer, the Board held that Claimant was not injured in the course and scope of his employment.

Claimant petitioned for this Court's review.[3] He contends that the Board erred because he was assigned to Vision's premises by Employer for the purpose of carrying out Employer's business.

The Act generally requires that for an injury to be compensable, it must occur while the employee is on premises under the control of the employer. Section 301(c)(1) of the Act states, in relevant part, as follows:

---

[3] This Court's review of a workers' compensation adjudication determines whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence. *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n.1 (Pa. Cmwlth. 2001).

The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; nor shall it include injuries sustained while the employe is operating a motor vehicle provided by the employer if the employe is not otherwise in the course of employment at the time of injury; but shall include all other injuries sustained while *the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere*, and shall include all *injuries caused by the condition of the premises* or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises *occupied by or under the control of the employer*, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. §411(1) (emphasis added). This Court has detailed the following requirements for establishing that an injury is compensable when it occurs at a time the claimant is not furthering the employer's business:

The statute requires that an injury to be compensable must: (1) arise in the course of employment and (2) be related thereto. Injuries may be sustained in the course of employment in two distinct situations: (1) where the employee, whether on or off the employer's premises, is injured while actually engaged in the furtherance of the employer's business or affairs, or (2) *where the employee although not actually engaged in the furtherance of the employer's business or affairs (a) is on the premises occupied or under the control of the employer*, or upon which the employer's business or affairs are being carried on; (b) is required by the nature of his employment to be present on his employer's premises; and (c) sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon.

*Workmen's Compensation Appeal Board (Slaugenhaupt) v. United States Steel Corporation*, 376 A.2d 271, 273 (Pa. Cmwlth. 1977) (emphasis added) (internal

5

citations omitted). "Whether an employee is acting within the scope of his employment is a question of law that is based upon findings of fact." *Acme Markets, Inc. v. Workers' Compensation Appeal Board (Purcell)*, 819 A.2d 143, 147 (Pa. Cmwlth. 2003).

Claimant contends that his injury is compensable under the second prong of *Slaugenhaupt, i.e.*, he was injured on the premises where Employer's affairs were being carried out. He was required to be there as a condition of his employment, and his injury was caused by a condition of the premises. In support, Claimant directs our attention to *ICT Group v. Workers' Compensation Appeal Board (Churchray-Woytunick)*, 995 A.2d 927 (Pa. Cmwlth. 2010).

In *ICT Group*, the claimant worked in a large corporate office complex leased by the claimant's employer. On her lunch break, the claimant left her office and headed for her vehicle, which was parked in a lot between two buildings leased by the employer. While attempting to enter her vehicle, she slipped on ice and fell, sustaining injuries to her back and legs.

The WCJ found that the claimant was injured in the course and scope of employment because she was injured on the employer's premises.[4] On appeal to this Court, the employer argued that the parking lot where the claimant's vehicle was parked was not part of its premises because it did not own or lease the lot. Further, the claimant was not required to be present in the parking lot.

This Court explained that it does not matter whether the employer had title to the realty on which the accident occurred. Rather, what matters is "whether

---

[4] The WCJ also found the claimant was furthering the employer's business pursuant to the "personal comfort doctrine." *ICT Group*, 995 A.2d at 930. This issue was not addressed by the Board or this Court on appeal.

6

the site of the accident was so connected with the employer's business as to form an integral part thereof." *Id.* at 931. We concluded that the parking lot was integral to employer's business. First, the claimant fell ten feet from the entrance to the building where she worked. Second, although the employer shared the parking lot with other tenants, the area where the claimant fell was reserved for the employer's employees. Third, the parking lot was located between two buildings leased by the employer, and employees routinely used the parking lot to go from one building to the other for work-related reasons. This evidence established "the parking lot was so connected to [the employer's] business as to form an integral part thereof." *Id.*

Employer contends that *ICT Group* is inapposite because the place where Claimant fell was not under its control. Claimant's evidence established merely that Vision had the right to access and use the complex's common area and parking lot. Further, the claimant in *ICT Group* fell in a lot reserved for employee parking that was next to her building. By contrast, Claimant was headed to a parking lot located across a walkway and courtyard and up two flights of stairs; there was no evidence presented that the lot was reserved for employees of Vision. Finally, Claimant was not required to park in a particular lot. Employer directs the Court to other precedent, which it contends is more germane.

In *Ortt v. Workers' Compensation Appeal Board (PPL Services Corp.)*, 874 A.2d 1264 (Pa. Cmwlth. 2005), the claimant left her workplace and walked approximately one block to a lot where her vehicle was parked. The claimant slipped on ice in the parking lot and sustained injuries. The employer owned four parking lots for employees, but it did not own the one where the claimant fell. However, the employer gave its employees the option to rent spaces

7

at this other lot at a reduced cost. This Court agreed with the WCJ that the lot was not so connected with the employer's business to form an integral part of that business. The claimant was not required to park there; the injury occurred on property owned and operated by a private entity; and it was the private entity, not the employer, that was responsible for the lot's maintenance, including the removal of snow and ice.

Employer also cites *Waronsky v. Workers' Compensation Appeal Board (Mellon Bank)*, 958 A.2d 1118 (Pa. Cmwlth. 2008). In that case, the claimant worked a 6:00 p.m. to 2:00 a.m. shift in downtown Pittsburgh, at a time when public transportation was not available. She parked across the street from her office in a public parking garage owned by the employer; she used pre-tax earnings to pay for parking. The claimant was hit by a car while crossing the street between the employer's building and the garage. She argued that the place where the accident occurred was part of the employer's premises because her office building and the garage were actually attached in a U-shaped design. By crossing the public street, she was simply walking between two parts of the employer's premises. We disagreed. The claimant was not obligated to park her vehicle in the garage, and she could have parked legally on the street.

Finally, Employer directs our attention to *PPL v. Workers' Compensation Appeal Board (Kloss)*, 92 A.3d 1276 (Pa. Cmwlth. 2014). In that case, the claimant worked in a building owned by her employer and connected by an enclosed third-floor skywalk to a privately owned parking garage. The garage was not open to the public. The employer offered its employees the ability to park there at a reduced rate. On the day of her injury, the claimant had parked on the second floor of the garage. While walking across the lower level of the garage, she

8

tripped and fell, sustaining injuries. The WCJ concluded that the injury occurred in the course and scope of employment, but this Court reversed.

We explained that the claimant was not required to park in the garage. The employer subsidized parking in other area garages and also offered a subsidy for public transportation. The skywalk connecting the buildings was a convenience for employees who chose to rent a space there; however, it did not make the two buildings one premises. We concluded as follows:

> Because the injuries suffered by [c]laimant occurred on a private parking lot, owned and operated by a third party, who was responsible for its control and maintenance, and [c]laimant was not required to park in the [garage], we cannot agree that the [garage] was so integral to [e]mployer's business that it constituted a part of [e]mployer's premises such that [c]laimant was injured in the course and scope of her employment. *Waronsky*; *Ortt*.

*Id.* at 1288.

With these principles in mind, we turn to the instant action. We begin with *Mansfield Brothers Painting v. Workers' Compensation Appeal Board (German)*, 72 A.3d 842 (Pa. Cmwlth. 2013).[5] The claimant in *Mansfield*, a painter, received work assignments through his union. His employer hired the claimant to paint dormitory rooms at the University of Pennsylvania. At the end of the work day, while walking to the train station, the claimant fell on an uneven part of a slate pathway located on University property, sustaining injuries.

---

[5] In *Mansfield*, we also addressed the circumstances where an employee may be considered a "traveling employee." *Mansfield*, 72 A.3d at 847 ("traveling employee" designation provides benefits for employees traveling to or from work that have no fixed place of work). Claimant does not argue he was a traveling employee.

9

The WCJ concluded, without explanation, that the claimant was injured in the course and scope of his employment. The Board affirmed, stating that the claimant was injured on the University's premises, where his employer's business affairs were being carried on. The employer appealed, claiming the injury did not occur on its premises, and this Court agreed. In reversing the Board, we explained as follows:

> The critical fact in this case is that [c]laimant was not employed by the University, but by [e]mployer. It hired [c]laimant to paint a single dormitory, the Quadrangle Building, and [e]mployer cannot be said to occupy, control, or use any part of the University's campus beyond the work site at the Quadrangle Building. The Board erroneously concluded that [e]mployer conducted business throughout the University's campus. "Premises" encompassed only [e]mployer's work site at the University. When [c]laimant fell, he had left the work site, crossed a public street and was 150 feet from the Quadrangle Building on a walkway owned by the University. At that point, he was on the University's, not [e]mployer's, premises.

*Mansfield*, 72 A.3d at 846. The claimant failed to prove the slate pathway was integral to his employer's interests. Further, once the claimant left his work site in the Quadrangle Building, he could have gone in any direction toward the train station. His employer had no interest in or control over the direction the claimant chose.

Here, it was Claimant's burden to prove that the path he was on at the time of his injury was integral to Employer's business. Claimant's evidence does not meet this burden. First, the photographs presented by Claimant showed that from the building where he worked there were multiple walkways leading left, right, or straight ahead. Claimant Exhibits 1, 7. Second, Claimant presented no evidence about his parking requirements. Third, the lease between Brandywine

10

Operating Partnership, L.P. and Continental Bank Holdings, Inc., merely gave Vision the "right, non-exclusive and in common with others, to use … the exterior paved driveways and walkways of the Building for vehicular and pedestrian access to the Building." R.R. 50. The lease does not establish that the area was integral to Vision's business in any way that can possibly be imputed to Employer. Fourth, Claimant's own testimony was that Brandywine Realty, not Vision, was the property manager in charge of snow removal.

In *ICT Group*, the parking lot used by the employee functioned as a walkway used for work-related reasons, and the claimant fell in her employer's reserved parking area. By contrast, here, Claimant worked at a business that rented one floor of a building located in a large office complex, and that complex was not integral to Employer's business. Once Claimant left the building, he selected the direction to walk. *Mansfield*, 72 A.3d at 846. On these facts, the WCJ correctly concluded that Claimant was not injured in the course and scope of his employment.

For the above-stated reasons, we affirm the order of the Board.

_____
MARY HANNAH LEAVITT, President Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Bradley, Jr.,                  :
               Petitioner        :
                                      :
            v.                 :   No. 1424 C.D. 2015
                                      :
Workers' Compensation Appeal     :
Board (TFI Resources, Inc.),        :
              Respondent      :

## **O R D E R**

AND NOW, this 15th day of March, 2016, the order of the Workers'
Compensation Appeal Board dated July 24, 2015, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge