Patricia WARONSKY, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (MELLON BANK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 22, 2008.

Decided Oct. 22, 2008.

Vincent A. Coppola, Pittsburgh, for petitioner.

Robert J. Pasquarelli, Pittsburgh, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and BUTLER, Judge.

OPINION BY Judge McGINLEY.

Patricia Waronsky (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the Workers' Compensation Judge's (WCJ) denial of Claimant's Claim Petition.

Claimant petitioned for benefits on May 28, 2005, and alleged she sustained a "[h]ead injury with resulting post concussive syndrome and cognitive disorder" on May 9, 2002, while in the course and scope of her employment with Mellon Bank (Employer) as a Clerk Investigator. Claim Petition, May 28, 2005, at 1. Claimant sought temporary total disability benefits beginning January 28, 2005. Claimant was injured when she was struck by a motor vehicle, while crossing Sixth Avenue, in downtown Pittsburgh prior to the start of her work-shift.

The parties agreed to bifurcate the issues of compensability and disability and first sought a determination as to whether Claimant was within the course and scope of her employment at the time she sustained her injury.

At hearing, Claimant testified she was assigned to work at the Service Center (Service Center) located on Sixth Avenue. On May 9, 2002, Claimant drove to work. Claimant worked the 6:00 p.m. to 2:00 a.m. shift. Claimant could not take public transportation because "from where I live there is no bus running at the time of . . . night." Claimant's Notes of Testimony (N.T. on 5/18/2006), May 18, 2006, at 22; Supplemental Reproduced Record (S.R.R.) at 85B.

Claimant parked in the Mellon parking garage. The Service Center "is on one side of Sixth [Avenue] . . . and the [Mel-

lon] parking garage is on the other ...."[1] N.T. on 5/18/2006 at 11; S.R.R. at 26B. Claimant parked her vehicle, exited the parking garage, and proceeded toward the Service Center. As Claimant crossed Sixth Avenue, a four-lane street, a motorist "stopped and motioned" for Claimant to cross as she proceeded into the fourth lane of travel. Claimant's Notes of Testimony (N.T. on 6/8/05), June 8, 2005, at 12; S.R.R. at 27B. At approximately 5:40 p.m. Claimant was struck by a motor vehicle driven by John Topetta.

Peter McCormack (McCormack) and Peg Karabinos (Karabinos) witnessed the accident. McCormack and Karabinos stated "that ... [Claimant] was crossing in the middle of the block (no cross walk).... [Claimant] ... stepped from in front of a vehicle, directly into the path of Topetta's vehicle." WCJ Decision, Employer Exb. Ltr. A, Commonwealth of Pennsylvania Police Crash Reporting Form at 8. As a result of the accident Claimant sustained numerous injuries including a head injury. She continues to experience headaches, tension pressure and vision problems. N.T. on 6/8/05 at 17–19; S.R.R. at 32B–34B.

Claimant participated in a transportation program administered by Employer. Claimant paid for a parking pass to the Mellon parking garage "and then, they [Employer] started a program where you could be reimbursed ... it helped you at tax time." N.T. on 6/8/05 at 36; S.R.R. at 51B. Claimant used pre-tax earnings to pay for transportation related expenses such as her parking pass. Claimant ac-

knowledged that Employer did not require her to park in the Mellon parking garage. She was free to park anywhere:

Q.: Now to your knowledge, did Mellon ever require you to park in this garage, or could you park anywhere and get to work?

A.: No, you could park anywhere.

N.T. on 6/8/05 at 38; S.R.R. at 53B.

Claimant offered additional testimony on this issue at a May 18, 2006, hearing. Claimant asserted that Lisa Schnupp, her immediate supervisor, set a "tone" that Claimant and all employees should park in the Mellon garage "because of the safety at that time of night, and they should be up at the other building with everyone...." N.T. on 5/28/2006 at 21–23; S.R.R. at 85B–87B.

In opposition to the Claim Petition, Employer offered the April 6, 2006, deposition testimony of Debra Humphries (Ms. Humphries), a Benefits Operations Manager for Employer. Deposition of Debra Humphries (Humphries Deposition), April 6, 2006, at 1–14; R.R. at 46–59. Employer does not "pay for any of the parking for its employees." Humphries Deposition at 6; R.R. at 51. Employer, however, did administer the transportation program for employees. The program allowed for both "parking and ... public transportation costs ... [to] be paid tax free." Humphries Deposition at 5–6; R.R. at 50–51. Participating employees could allocate a specific amount of money to be "deducted from their paycheck" to cover costs. Humphries Deposition at 5–6; R.R. at 50–

---

1. Although there was no testimony that clearly described the layout of the Service Center in relation to the Mellon parking garage, in the Claimant's brief it is described as an "inverted letter 'U' because Sixth Avenue ... runs through the center of the building." See Claimant's Brief at 3. The Service Center building has offices within both sides of the

"U" shaped edifice as well as offices in the span over Sixth Avenue. A diagram and images depicting the layout of the Service Center were introduced into evidence at the May 18, 2006, hearing. N.T. on 5/18/2006 at 9, 14; S.R.R. at 72B, 77B; Claimant Exb. Nos. 3–5, 10, 11; Reproduced Record (R.R.) at 60–63.

51. Employees "incur the [transportation] expense, and then ... they submit a claim [to Employer] and they are reimbursed those funds" on a tax-free basis. Humphries Deposition at 5–6; R.R. at 50–51. Ms. Humphries confirmed that there were no policies that required Claimant to park in "any of the designated parking lots" to qualify for the transportation program. Humphries Deposition at 6; R.R. at 51. Likewise, there were no "written formal documents ... by Mellon indicating that employees are directed to be transported in a particular fashion...." Humphries Deposition at 8; R.R. at 53.

On cross-examination, Ms. Humphries explained that Mellon garage was open to the public as "anyone could park there." Humphries Deposition at 11; R.R. at 56. Ms. Humphries acknowledged that there were multiple entrances to the Service Center. Humphries Deposition at 12; R.R. at 57. However, the entrance that Claimant intended to use at the time of her accident was the "easiest" or "most accessible" entrance. Humphries Deposition at 12; R.R. at 57.

Employer also offered the July 20, 2006, deposition testimony of Lisa Schnupp (Ms. Schnupp), supervisor with Employer until May 1, 2006. Deposition of Lisa Schnupp (Schnupp Deposition), July 20, 2006, at 1–28; R.R. at 28–45. Ms. Schnupp was Claimant's supervisor on May 9, 2002. Ms. Schnupp was "familiar with the transportation reimbursement program ..." provided by Employer and she also participated in the program. Schnupp Deposition at 7; R.R. at 34. Employees would "prepay ... parking, submit ... receipts to the benefits office, and they [Employer] would reimburse ..." the employees with the employee's own funds. Schnupp Deposition at 7–8; R.R. at 34–35.

Ms. Schnupp was not "aware of any restrictions with regard to the ... pro-

gram." Schnupp Deposition at 8; R.R. at 35. No one advised Ms. Schnupp that she, or any employee, had to park in a specific garage, and there never was any written directive to that effect. Ms. Schnupp was never advised that she was "designated to park in a specific garage in order to qualify for the program." Schnupp Deposition at 8; R.R. at 35. There was no policy from Employer "that ... mandated employees ... park in any specific designated parking lot." Schnupp Deposition at 8; R.R. at 35. Moreover, there were no restrictions on the mode of transportation Ms. Schnupp was allowed to take in order to qualify for the program. Schnupp Deposition at 8; R.R. at 35.

Ms. Schnupp never required "any of the employees ... [she] supervised ... to park in this specific [Mellon] garage ..." in order to participate in the transportation program. Schnupp Deposition at 10; R.R. at 37. Ms. Schnupp neither directed Claimant to park in the Mellon parking garage nor made "any suggestions or recommendations to her or provide[d] her information that she should consider parking in the garage." Schnupp Deposition at 10–11; R.R. at 37–38.

On cross examination, Ms. Schnupp testified that she "gave no directive regarding reimbursement for anyone to park in a specific garage ..."; however, the employees "as peers may have discussed it, but I don't recall ever having a specific meeting per se, to say you have to park there [at Mellon garage]." Schnupp Deposition at 13–14; R.R. at 40–41.

On July 20, 2006, Claimant offered rebuttal testimony. She recalled a meeting with Ms. Schnupp during which she suggested that everyone "would or should all park up in the same building and all walk up together being the time of night, it being 2 o'clock in the morning...." Deposition of Claimant (Claimant Deposition),

July 20, 2006, at 22–24; S.R.R. at 97B. Claimant explained that this conversation occurred at Three Mellon Bank Center prior to moving into the new facility located on Sixth Avenue. Claimant conceded that although Ms. Schnupp may have suggested that employees park in the Mellon garage, she did not consider it a requirement:

Q. Answer my question, ma'am. You were not mandated to park in that garage, correct?

A. No, we were not mandated.

Q. And you were not given a written formal piece of paper that indicated that for whatever reasons, safety or otherwise, you had to park in that garage, correct?

A. We didn't have to park in the garage.

Claimant Deposition at 24; S.R.R. at 97B.

The WCJ denied and dismissed Claimant's Claim Petition, finding that she did not sustain her injuries in the course and scope of her employment:

4. Taken as a whole, I find that the evidence of record fails to establish that the claimant was in the course of her employment when she sustained the injuries on May 9, 2002. . . . I base this finding on the following considerations. Deborah Humphries testified on behalf of the defendant [Employer]. Based upon the internal consistencies of her testimony, as well as the lack of any contradictory evidence, I found her testimony to be credible. Based upon that credible testimony, I find the following to be fact.

. . . .

As an employee of the defendant, the claimant was qualified to participate in such a transportation benefits plan . . . . To participate, an employee would sign up for the plan. Once that was done,

deductions would be made from the employee's paycheck. They would be set into a special fund. Once an employee participating in the plan presented proof that they incurred expenses either parking, or using public transportation, they were reimbursed from that special fund, again which was created by the deduction from the employee's paycheck, for those expenses. The benefit to the employee, in this case the claimant, was that those transportation costs would be paid with pre-tax dollars, rather than post-tax dollars. The defendant did not have any restriction as to where participating employees could park, and they were free to choose any facility they so desired. In addition, even employees not driving to work, but using public transportation, were capable of participating in this program.

Lisa Schnupp also testified on behalf of the defendant, and was found to be credible. Based upon her credible testimony, I find that the claimant was never restricted to using the parking facility on Sixth Avenue following the move to the new Service Center. To the extent that the claimant's later testimony could be construed as establishing a directive from Ms. Schnupp to only use that facility, that later testimony is not found credible.

Accordingly . . . I find that the defendant did not provide any parking benefit to its employees. Although it owned the garage in which the claimant did park, and that was located directly across from the facility which the defendant owned, and at which the claimant worked, the claimant was not required to use that particular parking facility. In addition, based upon the credible testimony of Ms. Humphries, anyone could park in the parking garage. Therefore, I find that it was not limited to Mellon employees. Further, the record is de-

void of any evidence that employees got a special rate for using one of the defendant's facilities. All that happened, was that the defendant administered a program under which the claimant got a tax break on expenses incurred as a result of commuting to work.

WCJ Decision, Findings of Fact (F.F.) No. 4 at 3–5; R.R. at 5–7.

Based upon the findings of fact, the WCJ concluded that

4. Therefore, as the claimant was commuting to work, and was injured on a public street, and she has not presented any evidence as to why that public street should now be considered part of the employer's premises, the claimant failed to meet her burden of proving that her injuries arose within the course and scope of her employment. Therefore, the claimant is not entitled to benefits under the Act.

WCJ Decision, Conclusions of Law, No. 4 at 5; R.R. at 7. Claimant appealed to the Board, which affirmed the WCJ's decision. This appeal followed.[2]

On appeal, Claimant asserts that she was within the course and scope of employment at the time of the injury and, therefore she was entitled to compensation within the meaning of Section 301(c)(1) of the Worker's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 411(1).[3]

## I. Course and Scope of Employment

 In a claim petition, the claimant bears the burden of proving all of the elements necessary to support an award. *Inglis House v. Workmen's Compensation Appeal Board*, 535 Pa. 135, 634 A.2d 592 (1993). It is the claimant's burden to prove, by substantial evidence, that she was injured in the course and scope of employment and that as a result of the injury she was disabled. *Id.*

 Injuries may be sustained in the course of employment where the employee, whether on or off the employer's premises, is injured while actually engaged in the furtherance of the employer's business or affairs. *Acme Markets, Inc., v. Workmen's Compensation Appeal Board (Purcell)*, 819 A.2d 143 (Pa.Cmwlth.2003). Additionally, injuries may be sustained in the course of employment where the employee, although not actually engaged in the furtherance of the employer's business or affairs, is (1) on the premises occupied or under the control of the employee; (2) required by the nature of his employment to be present; and (3) sustains injuries caused by the condition of the premises or by operation of the employer's business thereon. *Id.* Whether an employee is in

**2.** This Court's standard of review is limited to determining whether constitutional rights have been violated, an error of law has occurred, rules of administrative procedure have been violated, or a finding of fact necessary to support the adjudication was not supported by substantial evidence. *Kmart Corp. v. Workers' Compensation Appeal Board (Fitzsimmons)*, 561 Pa. 111, 748 A.2d 660 (2000). The issue of whether a claimant's injury occurred during the course of one's employment is a question of law subject to plenary review. *Williams v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 850 A.2d 37 (Pa. Cmwlth.2004).

**3.** In its opinion, the Board wrote in a footnote that Claimant "sustained her injury while commuting to work, [therefore] the 'coming-and-going' rule would normally be implicated." Opinion of the Board (Board Opinion), January 29, 2008, at 4; R.R. at 13. The Board noted, however, that "as the WCJ pointed out in his Decision, Claimant limited her argument to a premises argument. (Discussion)." Board Decision at 4; R.R. at 13. This Court also notes that in her Claim Petition, Claimant stated that her *injury occurred on Employer's premises*. Claim Petition at 1. This Court must focus on this argument.

the course and scope of employment when an injury occurs is a question of law to be determined on the basis of the findings of fact. *Thomas Jefferson University Hospital v. Workmen's Compensation Appeal Board (Cattalo),* 144 Pa.Cmwlth. 302, 601 A.2d 476 (1991).

## II. *Employer's Premises*

There is no dispute that Claimant was not actually engaged in activities furthering Employer's business when she was struck while crossing Sixth Avenue. Therefore, in order to establish entitlement to benefits it was critical that Claimant first establish that she was in the course and scope of employment because she was *on premises occupied or controlled by Employer* when she sustained her injuries. *Acme Markets.*

■ Pennsylvania courts have examined whether the location of the accident giving rise to a claimant's injury is to be considered as occurring on the employer's premises within the intendment of the Act. A standing principle is that the term "premises," as contemplated by Section 301(c)(1) of the Act, is not limited only to property owned by the employer, rather it may include any area "owned, leased, or controlled by the employer to a degree where the property could be considered an integral part of the employer's business." *Ortt v. Workers' Compensation Appeal Board (PPL Services Corp.),* 874 A.2d 1264, 1267 (Pa.Cmwlth.2005); *see also Wolsko v. American Bridge Co.,* 158 Pa.Super. 339, 44 A.2d 873, 877 (1945).

In some instances, even if the injury occurs at a location which would typically not be considered to be occupied or controlled by the employer Pennsylvania Courts have found otherwise. In determining whether an injury occurring at a particular area is on the "premises" of an employer, and hence compensable under the Act, Pennsylvania Courts have examined the control exerted by the employer over the area and looked to whether the area was so connected with the employer's business or operating premises as to form an integral part thereof.

In *Epler v. North American Rockwell Corporation,* 482 Pa. 391, 393 A.2d 1163 (1978), Franklin M. Epler (Mr. Epler) was employed by North American Rockwell Company (Rockwell) as a foundry worker. Mr. Epler parked his car in a parking lot provided by Rockwell for employees who drove to work. The municipality where Rockwell was located had banned on-street parking near the Rockwell plant and required Rockwell to provide off-street parking for employees. In response, Rockwell established a hierarchy. Rockwell directed management personnel to one parking lot contiguous with the plant and non-management employees, such as Mr. Epler, to an unpaved parking lot located across Park Road. Rockwell issued parking lot permits and limited access to the contiguous parking lot to designated management employees. The evidence established that if any employee violated the parking directive that employee was subject to warnings and disciplinary action for repeated violations. *Id.* at 394, 393 A.2d at 1164.

On May 20, 1972, Mr. Epler completed his work shift shortly after midnight. As he proceeded across Park Road toward his car, which was parked in the designated lot for non-management employees, he was fatally struck by a motor vehicle.

Our Supreme Court in *Epler* framed the issue as whether "the site of the accident was an integral part of employer's premises." *Id.* at 398, 393 A.2d at 1166. The Supreme Court indicated that the "actual ownership of the area is not necessarily determinative of the question. We are

satisfied that there are circumstances where an area can properly be designated as 'on the employer's premises' within the meaning of the Act even though the employer is not the legal owner of that area." *Id.* The Supreme Court concluded that "the critical factor is not the employer's title to or control over the area, but rather the fact that ... [the employer] had caused the area to be used by ... employees in performance of their assigned tasks."[4] *Id.* at 399, 393 A.2d at 1167.

In view of *Epler*, the first issue before this Court is whether Mellon parking garage was an integral part of Employer's business such that it was part of Employer's premises.

█ Pennsylvania case law recognizes that a parking garage may be so related to the operation of employer's business as to constitute an integral part of its operations. *Ingersoll–Rand Co. v. Workmen's Compensation Appeal Board*, 12 Pa. Cmwlth. 502, 316 A.2d 673 (1974). Where, as is here, a parking garage is separated from an employer's facility by a public thoroughfare it does not preclude a determination that the parking garage may be part of the employer's premises within the meaning of the Act. *Id.*

█ In the current controversy, unlike in *Epler*, Employer neither issued parking directives nor exercised control over the mode of transportation Claimant chose to commute to and from work. Claimant was free to park her vehicle where she chose. The testimony of record demonstrated that, unlike in *Epler*, Claimant was in no way obligated to park in Mellon parking garage because Employer neither issued any form of written or verbal policy nor mandated where its employees parked. Further, the municipality where Employer operated and where Claimant worked did not ban on-street parking. There was no necessity for Employer to provide private parking, again, unlike in *Epler*.

There is no question, and there is no dispute, that the employees, including Claimant, were not required to park at Mellon garage. Under the present factual circumstances, this Court is of the opinion that Mellon parking garage was not integral to the Employer's business and therefore, it was not part of the Employer's premises. Consequently, it may not be said that Claimant was traversing across Sixth Avenue between two parts of the Employer's premises, as in *Epler*. Therefore, the WCJ and Board correctly concluded that neither Mellon garage nor Sixth Avenue[5] was an integral part of Employer's premises and Claimant was not injured in the course and scope of her employment.[6]

4. This Court notes that *Epler* was decided by five of six participating justices with one justice authoring a concurring opinion. As a majority opinion, *Epler* is controlling precedent.

5. In *Epler*, our Supreme Court held that the public street was a part of the employer's "premises" under Section 301(c)(1), because it was necessary to traverse the public street going to and from a parking lot that was an integral part of the employer's business. *Id.* at 396, 393 A.2d at 1165. In other words, an injury that occurs in a public street between an employer's place of business and a designated parking lot may be in the course and scope of employment if crossing the public street is a necessary route between two parts of the employer's premises. Because this Court determined that Mellon garage was not part of Employer's premises there is no separate or further analysis needed concerning the status of Sixth Avenue.

6. Claimant contends that Sixth Avenue was part of Employer's premises based upon the uniqueness of the facts in the current controversy: (1) unavailability of public transportation for late-shift employees; (2) ownership of the garage by Employer and location of the garage in the same building as Claimant's office; and (3) the unusual design of the Ser-

Claimant failed to demonstrate that Employer owned, leased or controlled the area where her injuries occurred such that it was an integral part of her employer's business.

Accordingly, this Court affirms.

## ORDER

AND NOW, this 22nd day of October, 2008, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

vice Center. This Court has determined that Mellon parking garage was not part of Employer's premises. In light of this determination, the fact that the accident occurred on a public street when Claimant left Mellon parking garage is of no consequence. Therefore, we need not address Claimant's factual arguments because the outcome remains the same.