**[J-22-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| US AIRWAYS, INC. AND SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., | : | No. 35 WAP 2018 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court entered |
| Appellants | : | February 22, 2018 at No. 612 CD |
| | : | 2017, affirming the Order of the |
| | : | Workers' Compensation Appeal Board |
| v. | : | dated April 19, 2017 at No. A16-0545. |
| | : | |
| | : | ARGUED:  May 14, 2019 |
| WORKERS' COMPENSATION APPEAL | : | |
| BOARD (BOCKELMAN), | : | |
| | : | |
| Appellees | : | |

*Justice Wecht delivers the Opinion of the Court with respect to Parts I, II and IV and announces the Judgment of the Court.  Justice Wecht also delivers an opinion as to Part III.*

**OPINION**

**JUSTICE WECHT**                              **DECIDED:  NOVEMBER 20, 2019**

This appeal involves an airline employee who was injured while riding an airport shuttle bus to an employee parking lot after her shift ended.  The question before us is whether the employee's injury can be said to have occurred on the airline's premises for purposes of the Workers' Compensation Act even though the City of Philadelphia owned both the shuttle bus and the employee parking lot.

**I.**

The Claimant in this appeal, Betty Bockelman, is a Philadelphia-based flight attendant. On January 23, 2015, Bockelman was scheduled to work a one-day trip from Philadelphia to Miami and then back to Philadelphia. On that morning, Bockelman drove her personal vehicle to the Philadelphia International Airport and parked (for free) in one of two employee parking lots at the airport. Bockelman's employer, US Airways,[1] does not own or operate these parking lots. Instead, the City of Philadelphia Division of Aviation ("the Division" or "Division of Aviation") owns, operates, and maintains the parking lots specifically for airport and airline employees.

Anyone seeking to enter the Division's restricted parking lots must swipe a special credential called a Secured Identification Display Area ("SIDA") badge. The Division is responsible for issuing SIDA badges to all airport employees with jobs that require access to secure areas of the airport. The Division conducts a background check and fingerprinting before issuing a SIDA badge to an airline employee. When a new employee is hired, her employer pays the Division of Aviation a one-time administrative fee to cover the cost of the badge and the background check.

After an employee parks in one of the reserved lots, a Division of Aviation shuttle bus transports the employee to the airport terminal.[2] These shuttles are not open to the public; they are for airport employees only. US Airways itself does not own or exercise control over the shuttle buses, nor does it pay the Division any fees for its employees to use the shuttles. US Airways does not require employees to use the Division's parking

---

[1] Not long after Bockelman's injury, US Airways and American Airlines completed a merger and formed American Airlines Group, Inc. To avoid confusion, however, we will continue to refer to Bockelman's employer as "US Airways."

[2] Although the City of Philadelphia owns these shuttle buses, a private company called First Transit manages day-to-day operations of the shuttle service.

lots or shuttle service. In fact, US Airways gives its employees no guidance at all regarding how they should commute to work.

On the day of her injury, Bockelman rode the Division shuttle to the airport terminal and flew to Miami as scheduled. She then returned back in Philadelphia just before 10:00 p.m. that evening. After a brief discussion with a co-worker, Bockelman left the terminal and boarded the shuttle bus to take her back to her vehicle. While lifting her suitcase onto one of the shuttle's luggage racks, Bockelman slipped in a puddle, fell backwards, and crushed her left foot.

Bockelman later filed a workers' compensation claim petition alleging that she sustained disabling foot and ankle injuries as a result of the January 2015 slip and fall. She sought total temporary disability benefits for a closed period from January 23, 2015 (the date of her injury) through April 19, 2015 (when she ultimately returned to work). US Airways filed an answer, denying that Bockelman was within the course of her employment at the time of her injury. *See* 77 P.S. § 411(1) (defining a compensable injury to mean an injury that arises in the course of employment).

A Workers' Compensation Judge ("WCJ") held a hearing on Bockelman's claim petition in late October 2015. In support of her petition, Bockelman testified that, at the time of her injury, she was a member of the Association of Flight Attendants ("AFA"), a labor union representing flight attendants. Bockelman also produced a collective bargaining agreement between the AFA and US Airways, which included a provision stating that US Airways was responsible for providing either free or reimbursed parking for flight attendants at their domicile airports.

In opposition, US Airways presented documentary evidence and offered the testimony of Anthony Stanley, the Director of Planning and Administration for US Airways. Stanley testified that US Airways did not pay for Bockelman, or any other Philadelphia-

based flight attendants, to park in the employee parking lots at the Philadelphia International Airport. Stanley explained that the City of Philadelphia owns and operates all airport-employee parking lots, including the lot in which Bockelman parked on the day that she was injured. Stanley testified that the Division's lots are not only for US Airways' employees; rather, they are open to all airport and airline employees. Finally, while Stanley acknowledged that the AFA's collective bargaining agreement states that US Airways will provide free or reimbursed parking for flight attendants, he testified that those specific provisions do not apply to flight attendants like Bockelman who are domiciled in Philadelphia, since the Division of Aviation already provides free parking for airport employees.

The WCJ granted Bockelman's claim petition. In his decision, the WCJ explained that, if an employee is not actively furthering her employer's business or affairs when she suffers an injury, the injury arises in the course of employment only if: (1) the injury occurs on the employer's premises; (2) the employee's presence on the employer's premises is required by the nature of her employment; and (3) the employee's injury was caused by the condition of the premises or by the operation of the employer's business thereon.[3] WCJ Opinion, 4/27/2016, at 11; *see* 77 P.S. § 411(1).

The WCJ found that Bockelman's injury satisfied all three elements of this test. As for the first prong, the WCJ noted that Bockelman was injured while "taking a specifically designated shuttle bus to an employee parking lot that required an identification card (the SIDA badge) for entry and exit." WCJ Opinion, 4/27/2016, at 11. Turning to the second prong, the WCJ stressed that Bockelman "boarded the [shuttle] bus soon after her flight had landed in Philadelphia." *Id.* Finally, with regard to the third prong, the WCJ noted

---

[3] Courts sometimes refer to this three-factor inquiry as the *Slaugenhaupt* test, though the elements derive from Section 301(c)(1) of the Act directly. 77 P.S. § 411(1); *see generally W.C.A.B. (Slaugenhaupt) v. U.S. Steel Corp.*, 376 A.2d 271 (Pa. 1977).

that the evidence was undisputed that Bockelman's injury was caused by the wet floor on the shuttle bus. *Id.* Accordingly, the WCJ concluded that Bockelman's injury arose in the course of her employment. US Airways appealed to the Workers' Compensation Appeal Board ("Appeal Board"), which affirmed the WCJ's decision.

US Airways then appealed to the Commonwealth Court, arguing that the WCJ erred in concluding that Bockelman's injury satisfied the first two prongs of the *Slaugenhaupt* test. According to US Airways, Bockelman's injury did not occur on the airline's premises given that US Airways neither owned nor operated the shuttle upon which Bockelman was injured. Furthermore, US Airways maintained that Bockelman's presence on the airport shuttle was not mandatory, since US Airways did not direct its employees to park in any particular lot at the airport.

The Commonwealth Court rejected both of US Airways' arguments in a unanimous, published opinion. *US Airways, Inc. v. W.C.A.B. (Bockelman)*, 179 A.3d 1177 (Pa. Cmwlth. 2018). The court first agreed with the WCJ that, under the *Slaugenhaupt* test, an employee's injury arises in the course of her employment when: (1) the employee is on the premises occupied or controlled by the employer or upon which the employer's affairs are being carried on; (2) the employee is required by the nature of her employment to be present on the employer's premises; and (3) the employee sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon. *Id.* at 1180 (citing *Slaugenhaupt*, 376 A.2d at 273).

The court next explained that the first element of the *Slaugenhaupt* test is satisfied not only when an employee is on an employer's premises proper, but also any areas significantly connected to an employer's affairs, including a reasonable avenue of ingress to and egress from the workplace. *Id.* at 1180-82 (citing *Epler v. N. Am. Rockwell Corp.*, 393 A.2d 1163, 1166-67 (Pa. 1978) (holding that an employee crossing a public street

between employer's plant and employer's parking lot remained on the employer's premises); *Interstate United Corp. v. W.C.A.B. (Bair)*, 424 A.2d 1015, 1017 (Pa. Cmwlth. 1981) (holding that a steel-plant cafeteria worker was on her employer's premises when she fell on a footbridge that connected the plant to a public street); and *Fashion Hosiery Shops v. W.C.A.B. (Kurta)*, 423 A.2d 792, 797 (Pa. Cmwlth. 1980) (holding that a walkway near the entrance of a multi-tenant commercial building constituted part of the employer's premises)). Thus, the court found that, because Bockelman was present on a reasonable means of access to and from the airport terminal, she satisfied the first requirement of the *Slaugenhaupt* test.

Next, the court noted that the second requirement of the *Slaugenhaupt* test—that the employee is required by the nature of her employment to be present on the employer's premises—is satisfied not only where an employee is on the premises at issue to work, but also where she is entering or exiting her workspace within a reasonable time before or after her shift. *US Airways*, 179 A.3d at 1182-83 (discussing *ICT Group v. W.C.A.B. (Churchray-Woytunick)*, 995 A.2d 927, 932 (Pa. Cmwlth. 2010) (holding that an employee leaving for her lunch break and walking on employer's premises was required by the nature of her work to be present) and *Allegheny Ludlum Corp. v. W.C.A.B. (Hines)*, 913 A.2d 345, 349 (Pa. Cmwlth. 2006) (holding that an employee starting his shift and walking along the only authorized route to workspace was required by the nature of his work to be present)). Applying that principle, the Commonwealth Court held that, because Bockelman used the airport shuttle as a reasonable means of egress from her workplace, she satisfied the second requirement of the *Slaugenhaupt* test. Having rejected US Airways' arguments regarding the first two prongs of the *Slaugenhaupt* test, the Commonwealth Court affirmed the WCJ's award of benefits.

US Airways filed a petition for allowance of appeal, which we granted to consider whether a worker who voluntarily uses an optional employee parking area remains in the course of her employment while traveling between that area and her typical workspace. The answer to that question lies in Section 301(c)(1) of the Workers' Compensation Act, which we construe using the interpretative principles codified in the Statutory Construction Act. *See* 1 Pa.C.S. § 1501 *et seq.* Foremost among those principles is the rule that remedial legislation like the Workers' Compensation Act should be construed liberally to effectuate its humanitarian objectives. *See* 1 Pa.C.S. § 1928(c); *Colpetzer v. W.C.A.B. (Standard Steel)*, 870 A.2d 875, 882 (Pa. 2005).

**II.**

We begin our analysis with Section 301(c)(1) of the Act, which provides as follows:

> The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, except as provided under subsection (f), arising in the course of his employment and related thereto . . . . The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; nor shall it include injuries sustained while the employe is operating a motor vehicle provided by the employer if the employe is not otherwise in the course of employment at the time of injury; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

77 P.S. § 411(1) (footnote omitted).

Although this provision is somewhat unwieldy at first blush, it distills to a few simple rules for our purposes. Most importantly, an employee's injury is compensable if it

"aris[es] in the course of his employment." *Id.* This can occur in two distinct situations. The first is when an employee is injured on or off the employer's premises while engaged in furtherance of the employer's business or affairs. Here, all parties agree that Bockelman was not furthering US Airways' business interests at the time of her injury, since her shift had concluded and she was heading back to her vehicle.

The second type of injury that arises in the course of employment occurs when an employee is not furthering her employer's business or affairs but nonetheless: (1) "is on the premises occupied or under the control of the employer, or upon which the employer's business or affairs are being carried on;" (2) "is required by the nature of his employment to be present on his employer's premises;" and (3) "sustains injuries caused by the condition of the premises or by operation of the employer's business or affairs thereon." *Slaugenhaupt*, 376 A.2d at 273. Both US Airways and Bockelman agree that *Slaugenhaupt*'s three-factor test governs here. *See* Reply Brief for US Airways at 2; Brief for Bockelman at 7-8.

As this Court has explained, the meaning of the phrase "the employer's premises" in Section 301(c)(1)—and, by extension, in the *Slaugenhaupt* test—is not limited to property that the employer legally owns or physically controls. *Epler*, 393 A.2d at 1165. Parking lots, public streets, and common areas in multi-unit office buildings, for instance, may be considered part of the employer's premises if they are integral to the employer's workspace or constitute a reasonable means of ingress to or egress from the workplace. *Id.*; *Fashion Hosiery Shops*, 423 A.2d at 797; *see* DAVID B. TORREY & ANDREW E. GREENBERG, WEST'S PA. PRAC., WORKERS' COMPENSATION § 4:75 (3d ed. 2008 & Supp. 2018) (collecting cases).

Our decision in *Epler* best illustrates the proper application of these principles. In that case, the municipality in which the employer's plant was located banned on-street

parking, thus requiring the employer to provide off-street parking for its employees. *Epler*, 393 A.2d at 1164. The employer secured a parking lot adjacent to the plant for management personnel to use, but relegated non-management employees to an unpaved parking lot across the street. *Id.* The employer issued parking permits and subjected employees to disciplinary action for violating the parking policy. *Id.*

While crossing the street one evening on his way back to the non-management parking lot, Epler was struck by a motorist and killed. When Epler's wife sought workers' compensation benefits, the employer argued that Epler's injury did not arise in the course of his employment because it occurred in a public street, an area clearly not occupied by or under the control of the employer.

This Court ultimately held that the public street where Epler's injury took place constituted part of "the employer's premises" for purposes of the Workers' Compensation Act. We explained that "there are circumstances where an area can properly be designated as 'on the employer's premises' within the meaning of the Act even though the employer is not the legal owner of that area." *Id.* at 1166. For this reason, courts must consider not just mere ownership of the land, but also "whether the location of the accident was so connected with the [employer's] business or operating premises as to form an integral part thereof." *Id.* at 1165 (internal quotation marks omitted). In other words, "the critical factor is not the employer's title to or control over the area, but rather the fact that [the employer] had caused the area to be used by [employees] in performance of their assigned tasks." *Id.* at 1167.

### III.

US Airways argues that *Epler* is distinguishable given that, unlike the employer in *Epler*, US Airways does not instruct employees where to park, issue parking permits, or discipline employees for parking in restricted areas. Brief for US Airways at 21-22; Reply

Brief for US Airways at 4. Put differently, US Airways contends that Bockelman's injury on the shuttle bus did not arise in the course of her employment because she remained "free to park her vehicle where she chose" and because the airline did not "exercis[e] control over the mode of transportation [Bockelman] chose to commute to and from work." Brief for US Airways at 19. In this regard, US Airways suggests that the decision below conflicts with longstanding precedent which holds that an employee is not in the course of employment while traveling between a parking lot and the workplace "unless the employer mandates how an employee commutes to work and/or where the employee must park his [or] her vehicle." Brief for US Airways at 13-16; *see PPL v. W.C.A.B. (Kloss)*, 92 A.3d 1276, 1285 (Pa. Cmwlth. 2014) (holding that a private parking deck subsidized by employer did not constitute part of employer's premises because employees were free to park wherever they wished and employer had a similar subsidy arrangement with another nearby lot); *Waronsky v. W.C.A.B. (Mellon Bank)*, 958 A.2d 1118, 1125 (Pa. Cmwlth. 2008) (holding that a parking garage across the street from workplace was not part of employer's premises where employer "neither issued parking directives nor exercised control over the mode of transportation [employees] chose to commute to and from work"); *Ortt v. W.C.A.B. (PPL Servs. Corp.)*, 874 A.2d 1264, 1267-68 (Pa. Cmwlth. 2005) (explaining that a parking lot "could not be considered an integral part of [e]mployer's business because parking in that lot was purely optional, not required or 'integral' to [c]laimant's employment").

US Airways is correct that a handful of Commonwealth Court decisions—like *Waronsky*, *Ortt*, and *PPL*—have read our decision in *Epler* narrowly. In *Waronsky*, for example, the Commonwealth Court concluded that an employee who parked across the street from her office was not injured in the course of her employment when she was struck by a vehicle while crossing a street that separated her office from the parking

garage. *Waronsky*, 958 A.2d at 1125. Though the *Waronsky* Court correctly recognized that "a parking garage may be so related to the operation of employer's business as to constitute an integral part of its operations," *id.*, the court nevertheless distinguished *Epler* as follows:

> In the current controversy, unlike in *Epler*, Employer neither issued parking directives nor exercised control over the mode of transportation Claimant chose to commute to and from work. Claimant was free to park her vehicle where she chose. The testimony of record demonstrated that, unlike in *Epler*, Claimant was in no way obligated to park in Mellon parking garage because Employer neither issued any form of written or verbal policy nor mandated where its employees parked. Further, the municipality where Employer operated and where Claimant worked did not ban on-street parking. There was no necessity for Employer to provide private parking, again, unlike in *Epler*.
>
> There is no question, and there is no dispute, that the employees, including Claimant, were not required to park at Mellon garage. Under the present factual circumstances, this Court is of the opinion that Mellon parking garage was not integral to the Employer's business and therefore, it was not part of the Employer's premises. Consequently, it may not be said that Claimant was traversing . . . between two parts of the Employer's premises, as in *Epler*.

*Id.* (footnote omitted).

We are not persuaded by *Waronsky*'s reasoning. To begin with, the decision overstates the level of control that the employer in *Epler* exerted over its employees. Nothing in *Epler* indicates that the employer had ever "exercised control over the mode of transportation [that its employees] chose to commute to and from work." *Waronsky*, 958 A.2d at 1125. Nor is it entirely correct to suggest that the worker in *Epler* was "obligated," *id.*, to park in the lot across the street from his workplace. The employer's parking policy simply focused on preventing junior employees from occupying the better, more conveniently located parking lot, which the employer wanted to reserve for managers and supervisors. *See Epler*, 393 A.2d at 1164 ("The pecking order for the most

desirable contiguous parking places was established by the issuance of parking lot permits to limit access to contiguous places to designated employees.").

These misstatements are not trivial. *Epler* revisionism has led to the mistaken belief that a parking area cannot be integral to an employer's premises if workers are given a choice whether or not to use it. *PPL*, 92 A.3d at 1288 (holding that a private parking deck was not integral to employer's premises because claimant was "was not required" to park there); *Ortt*, 874 A.2d at 1267-68 (concluding that a parking lot was not integral to employer's premises because "parking in that lot was purely optional"); *see* Reply Brief for US Airways at 9 ("If the claimant has options as to how to commute and where to park, like [Bockelman,] she is not on the employer's premises while traveling between the workplace and the parking lot."). In reality, though, almost every employer-sponsored parking program is, to some extent, optional. Even under the harsh employee-parking regime at issue in *Epler*, for example, workers presumably could have walked, biked, or taken public transportation to work.

To make matters worse, decisions like *Waronsky* and *Ortt* suggest that an injury does not occur on "the employer's premises" unless the employer owns or controls the area in question. The *Waronsky* Court, for example, held that an employer's premises includes "any area owned, leased, or controlled by the employer to a degree where the property could be considered an integral part of the employer's business." *Waronsky*, 958 A.2d at 1124 (internal quotation marks omitted); *accord Ortt*, 874 A.2d at 1267 ("The term 'premises,' as contemplated by Section 301(c)(1) of the Act, means that the area where the injury occurred was owned, leased, or controlled by the employer to a degree where that property could be considered an integral part of the employer's business."). Yet *Epler* makes clear that an area may constitute part of an employer's premises even if the employer does not own or control it. *Epler*, 393 A.2d at 1167 ("[T]he critical factor

is not the employer's title to or control over the area, but rather the fact that he had caused the area to be used by his employees in performance of their assigned tasks.").

Put simply, the decisions that US Airways faults the court below for not applying were themselves based on a misunderstanding of *Epler*'s central holding. We stand by *Epler*'s conclusion that the phrase "the employer's premises" in Section 301(c)(1) of the Act should be construed liberally to include any area that is integral to the employer's business operations, including any reasonable means of ingress to or egress from the workplace. *See Epler*, 393 A.2d at 1166 ("We are satisfied that there are circumstances where an area can properly be designated as 'on the employer's premises' within the meaning of the Act even though the employer is not the legal owner of that area."). "[T]he critical factor is not the employer's title to or control over the area, but rather the fact that he had caused the area to be used by his employees in performance of their assigned tasks." *Id.* at 1167.

### IV.

Applying this rule, the Commonwealth Court, Appeal Board, and WCJ correctly concluded that the lot in which Bockelman parked her vehicle was integral to US Airways' business operations. Bockelman used the airport parking lot and shuttle service to enter and exit her workplace. As part of US Airways' business relationship with the airport, US Airways clearly was aware that the Division of Aviation would make employee parking available to the airline's employees. Indeed, the evidence presented to the WCJ suggests that, had the Division not done so, US Airways would have been obligated under its collective bargaining agreement with the Association of Flight Attendants to reimburse flight attendants like Bockelman for the cost of airport parking. Additionally, US Airways was required to (and did) obtain SIDA badges—which could then be used to enter the Division's employee parking lots—for all of its Philadelphia-based flight attendants. Given

these facts, we have little difficulty concluding that the parking lot and shuttle were connected with, and thus integral to, US Airways' business operations at the Philadelphia International Airport.

Accordingly, we affirm the order of the Commonwealth Court.

Justices Todd and Donohue join the opinion.

Justices Baer and Mundy join parts I, II, and IV of the opinion and concur in part III.

Justice Baer files a concurring opinion in which Justice Mundy joins.

Justice Dougherty files a concurring opinion.

Chief Justice Saylor did not participate in the consideration or decision of this case.